STATE OF NORTH CAROLINA v. NOBBIE LEE DUBOSE, III

No. COA10-213

(Filed 7 December 2010)

**1. Firearms and Other Weapons— conspiracy to discharge a firearm into occupied property—sufficient evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of conspiracy to discharge a firearm into occupied property. The State presented substantial evidence of an agreement for defendant to discharge a firearm at an individual standing in front of the doors to an occupied gymnasium and there was a substantial likelihood that the bullets would enter or strike the building.

**2. Sentencing— aggravating factors—criminal street gang activity—finding made outside of defendant's presence**

The trial court erred by finding in each of two judgments that the offenses of discharging a firearm on educational property and conspiracy to discharge a firearm into occupied property involved criminal street gang activity pursuant to N.C.G.S. § 14-50.25. The findings were made outside of defendant's presence and without giving him an opportunity to be heard.

**3. Appeal and Error— constitutional question—not reached— case resolved on other grounds**

The Court of Appeals did not reach the issue of whether N.C.G.S. § 14-50.25 is constitutionally invalid because the Court disposed of the case on other grounds. The Court will not decide a constitutional question when the disposition of the case may be resolved on other grounds.

Appeal by defendant from judgments entered 27 July 2009 by Judge Thomas H. Lock in Johnston County Superior Court. Heard in the Court of Appeals 29 September 2010.

*Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell, for the State.*

*Glenn, Mills, Fisher & Mahoney, P.A., by Carlos E. Mahoney, for defendant-appellant.*

*American Civil Liberties Union of North Carolina Legal Foundation, by Andrew Lee Farris and Katherine Lewis Parker; Legal Aid of North Carolina-Advocates for Children's Services, by Lewis Pitts; North Carolina Advocates for Justice, by Burton Craige; and North Carolina Prisoner Legal Services, Inc., by Mary S. Pollard, amici curiae.*

STEELMAN, Judge.

Where the State presented substantial evidence of an agreement for defendant to discharge a firearm at an individual standing in front of the doors to an occupied gymnasium and there was a substantial likelihood that the bullets would enter or strike the building, the trial court did not err by denying defendant's motion to dismiss the charge of conspiracy to discharge a firearm into occupied property. Where the trial court made a determination pursuant to N.C. Gen. Stat. § 14-50.25 that the offenses involved criminal street gang activity outside of defendant's presence and without giving him an opportunity to be heard, the judgments must be vacated and remanded for a new sentencing hearing.

## I. Factual and Procedural Background

On 27 January 2009, Nobbie Dubose, III (defendant), Raasheive Ray (Ray), Caprecia Johnson (Johnson), and Keona Phelps (Phelps) attended a basketball game at Clayton High School. Defendant and Phelps were members of a gang called Nine Trey Scarface. During the game, defendant spotted Anthony Hinton (Hinton), a member of a rival gang, the 85/95 Bloods, standing next to the gymnasium doors with other members of the 85/95 gang. Defendant, Ray, Johnson, and Phelps decided to leave because of the presence of the 85/95 gang members. When defendant walked past Hinton, he said, "What's popping?" Hinton replied, "You already know." Defendant walked to the parking lot and stated that "he was about to roll."[1] When defendant reached Johnson's vehicle, a gun was retrieved from underneath the driver's seat.[2] Johnson allowed Ray to drive her vehicle because "evidently, [Ray and defendant] were about to do something." Ray

---

1. Phelps testified that defendant's statement meant that he was about to kill someone.

2. Conflicting evidence was presented as to who retrieved the gun from underneath the driver's seat. Phelps testified that Ray retrieved the gun. Ray testified that it was defendant who retrieved the gun. Johnson stated that Phelps retrieved the gun and handed it to defendant.

entered the vehicle and sat in the driver's seat, defendant sat in the front passenger's seat, and Phelps and Johnson sat in the back seat. Ray and defendant then argued over who was going to fire the gun. It was decided that defendant was going to fire the gun, and he told Johnson and Phelps to duck down in the back seat. Ray then drove past the gymnasium and defendant fired the gun twice. The group then sped away.

Defendant fired the gun in the direction of Hinton, who was standing in front of the gymnasium with two of his friends. No one was injured. The bullets struck a brick column that was located directly in front of the gymnasium doors and was part of the structure. After the shooting occurred, Ray drove defendant to Benson, where he ran into the woods and hid the gun.

On 2 March 2009, defendant was indicted for discharging a firearm on educational property and discharging a firearm into occupied property. On 30 March 2009, defendant was also indicted for conspiracy to discharge a firearm on educational property and conspiracy to discharge a firearm into occupied property. Defendant pled not guilty to each of these charges. On 16 July 2009, the State gave notice of its intent to seek a jury determination of two aggravating factors: (1) that the offense was committed for the benefit of, or at the direction of, any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members pursuant to N.C. Gen. Stat. § 15A-1340.16(d)(2a); and (2) that defendant had been found to be in willful violation of the conditions of his probation during the ten-year period prior to the commission of the offenses pursuant to N.C. Gen. Stat. § 15A-1340.16(d)(12a).

On 21 July 2009, defendant's case was called for trial. During the course of the trial, the State dismissed the charge of discharging a firearm into occupied property. On 24 July 2009, the jury found defendant guilty of the three remaining charges. Following the jury verdict, the State informed the trial court that it would not pursue the gang-related aggravating factor (2a) because defendant had been convicted of conspiracy. Defendant pled no contest to the aggravating factor that he had a prior probation violation (12a) as to each of the three charges of which he was found guilty.

The trial court found defendant to be a prior record level II for felony sentencing purposes and sentenced defendant from the aggravated range to consecutive sentences of 22 to 27 months imprison-

ment on the convictions of discharging a firearm on educational property and conspiracy to discharge a firearm on occupied property. The trial court arrested judgment on the other conspiracy conviction. On 27 July 2009, the trial court filed two written judgments. On each of the judgments, the trial court found that the "designated offense(s) involved criminal street activity" pursuant to N.C. Gen. Stat. § 14-50.25. Defendant appeals.

## II. Motion to Dismiss—Conspiracy

[1] In his first argument, defendant contends that the trial court erred by denying his motion to dismiss the charge of conspiracy to discharge a firearm into occupied property based upon the sufficiency of the evidence. We disagree.

### A. Standard of Review

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted). Substantial evidence is defined as "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992) (citation omitted). The appellate court views the evidence "in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. Contradictions and discrepancies must be resolved in favor of the State . . . ." *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 387-88 (1984) (internal citations omitted).

### B. Analysis

In order for a defendant to be found guilty of the substantive crime of conspiracy, the State must prove there was an agreement to perform every element of the underlying offense. *State v. Suggs*, 117 N.C. App. 654, 661, 453 S.E.2d 211, 215 (1995). The elements of discharging a firearm into occupied property are "(1) willfully and wantonly discharging (2) a firearm (3) into property (4) while it is occupied." *State v. Rambert*, 341 N.C. 173, 175, 459 S.E.2d 510, 512 (1995) (citation omitted); *see also* N.C. Gen. Stat. § 14-34.1 (2009). Therefore, the State had the burden of showing substantial evidence of an agreement to perform each of the elements of discharging a firearm into occupied property.

"In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice. Nor is it necessary that the unlawful act be completed." *State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (internal citations omitted). The existence of a conspiracy may be established through direct or circumstantial evidence. *State v. Bindyke*, 288 N.C. 608, 616, 220 S.E.2d 521, 526 (1975). "Direct proof of the charge is not essential, for such is rarely obtainable. It may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy." *State v. Whiteside*, 204 N.C. 710, 712, 169 S.E. 711, 712 (1933) (citation omitted).

In the light most favorable to the State, the evidence presented at trial showed that defendant, Ray, Johnson, and Phelps decided to leave the Clayton High School basketball game because of the presence of members of the 85/95 gang. As they walked to the parking lot, defendant stated that he was about to "roll," meaning he was going to kill someone. Once the group reached Johnson's vehicle, a gun was retrieved from underneath the driver's side seat. Johnson agreed to allow Ray to drive her vehicle and defendant to sit in the front passenger's seat because "evidently, [Ray and defendant] were about to do something." While inside the vehicle, Ray and defendant argued over who was going to fire the gun at Hinton. Once it was decided, Ray drove slowly by the gymnasium while defendant fired the gun twice at Hinton, who was standing by a column located in front of the gymnasium doors.

Defendant argues that the State's evidence failed to prove an agreement to discharge the firearm into occupied property because Hinton was standing outside the building. In *State v. Canady*, the defendant discharged a firearm and the bullet struck the exterior wall of an apartment. 191 N.C. App. 680, 684, 664 S.E.2d 380, 382 (2008), *disc. review denied*, 363 N.C. 132, 673 S.E.2d 662 (2009). On appeal, the defendant argued that the State presented insufficient evidence to show he had shot "into" the apartment. *Id.* at 686, 664 S.E.2d at 384. The defendant contended that in order to satisfy the element of "into property," the bullet must have penetrated an interior wall of the apartment, or entered the apartment. *Id.* at 687, 664 S.E.2d at 384. This Court disagreed and held:

the plain meaning of "into" includes "against" as in "crashed *into* a tree." This sentence does not mean "crashed *through* a tree."

Similarly, discharging a firearm "into" an enclosure does not have to mean "through" the wall of the enclosure. . . . The exterior wall is nonetheless a wall, which the bullet was fired against, thereby fulfilling the requirement of being fired "into" the enclosure.

*Id.* (internal citation omitted).

In the instant case, the evidence presented showed that defendant, Ray, Johnson, and Phelps all understood and impliedly agreed that defendant would shoot at Hinton as the group slowly drove by the occupied gymnasium. Hinton was standing by a brick column in front of the gymnasium doors. There was a substantial likelihood that the bullets shot would enter or strike the building. We hold that the State presented substantial evidence of an agreement for defendant to discharge a firearm into an occupied building. The trial court did not err by denying defendant's motion to dismiss the charge of conspiracy to discharge a firearm into an occupied building.

This argument is without merit.

## III. N.C. Gen. Stat. § 14-50.25

[2] In his second argument, defendant contends that the trial court erred by finding in each judgment that the offenses involved criminal street gang activity without defendant having notice or an opportunity to be heard on that issue. We agree.

In the instant case, the trial court entered findings pursuant to N.C. Gen. Stat. § 14-50.25 of the North Carolina Street Gang Suppression Act, which provides:

When a defendant is found guilty of a criminal offense, other than an offense under G.S. 14-50.16 through G.S. 14-50.20, the presiding judge shall determine whether the offense involved criminal street gang activity. If the judge so determines, then the judge shall indicate on the form reflecting the judgment that the offense involved criminal street gang activity. The clerk of court shall ensure that the official record of the defendant's conviction includes a notation of the court's determination.

N.C. Gen. Stat. § 14-50.25 (2009). However, in the instant case, the trial court made these findings without notice to defendant and outside of his presence. Following the jury verdict, the State informed defendant and the court that it would not pursue the aggravating factor of criminal street gang activity (2a) at sentencing. The trial court

then pronounced its judgment in open court. The trial court made no mention that it was finding that defendant's convictions involved criminal street gang activity pursuant to N.C. Gen. Stat. § 14-50.25. Rather, these findings first appeared in the trial court's written judgments. Defendant was not given an opportunity to be heard regarding these findings nor to object to the trial court entering such findings to create an adequate record for appellate court review.

It is .well-established that a criminal defendant has a right to be present when his sentence is imposed. *State v. Crumbley*, 135 N.C. App. 59, 66, 519 S.E.2d 94, 99 (1999); *see also State v. Pope*, 257 N.C. 326, 330, 126 S.E.2d 126, 129 (1962) ("The right to be present at the time sentence or judgment is pronounced is a common law right, separate and apart from the constitutional or statutory right to be present at the trial." (citation omitted)). In *Crumbley*, the trial court rendered judgment in open court and imposed multiple sentences upon the defendant, but did not indicate whether those sentences should run concurrently or consecutively. 135 N.C. App. at 61, 519 S.E.2d at 96. The trial court subsequently entered the written judgment, which provided that the sentences would run consecutively. *Id.* This Court held that "[the] substantive change in the sentence could only be made in the Defendant's presence, where he and/or his attorney would have an opportunity to be heard," and rejected the State's argument that there was no error because the defendant was present in open court at the time the sentence was originally rendered. *Id.* at 67, 519 S.E.2d at 99. We concluded that "[b]ecause there is no indication in this record that Defendant was present at the time the written judgment was entered, the sentence must be vacated and this matter remanded for the entry of a new sentencing judgment." *Id.* at 66, 519 S.E.2d at 99.

Although the trial court did not alter defendant's sentence in its written judgments, it did make a specific finding that defendant had engaged in criminal street gang activity pursuant to N.C. Gen. Stat. § 14-50.25. Such a finding could be used in future criminal prosecutions or civil proceedings. N.C. Gen. Stat. §§ 14-50.16, -50.26 (2009). N.C. Gen. Stat. § 14-50.16 provides that it is unlawful to conduct or participate in a pattern of criminal street gang activity. N.C. Gen. Stat. § 14-50.16(a)(1) (2009). A "pattern of criminal street gang activity" is defined as having a conviction for at least two prior incidents of criminal street gang activity. N.C. Gen. Stat. § 14-50.16(d) (2009). A violation of N.C. Gen. Stat. § 14-50.16 is generally classified as a Class H

felony. N.C. Gen. Stat. § 14-50.16(a). In addition, N.C. Gen. Stat. § 14-50.26 provides that "[a] conviction of an offense defined as criminal gang activity shall preclude the defendant from contesting any factual matters determined in the criminal proceeding in any subsequent civil action or proceeding based on the same conduct." N.C. Gen. Stat. § 14-50.26.

We hold that making a finding of criminal street gang activity was a "substantive change" in the judgments that was required to be made in defendant's presence where he would have had an opportunity to be heard. The judgments in this matter are vacated and the cases remanded for a new sentencing hearing.

[3] Defendant and the *amici curiae* brief request that this Court invalidate N.C. Gen. Stat. § 14-50.25 on constitutional grounds. However, it is well-established that an appellate court will not decide a constitutional question when the disposition of the case may be resolved on other grounds. *State v. Blackwell*, 246 N.C. 642, 644, 99 S.E.2d 867, 869 (1957) ("[A] constitutional question will not be passed on even when properly presented if there is also present some other ground upon which the case may be decided." (citations omitted)); *State v. Muse*, 219 N.C. 226, 227, 13 S.E.2d 229, 229 (1941) (an appellate court will not decide a constitutional question "when the appeal may be properly determined on a question of less moment." (citation omitted)).

NO ERROR IN PART; VACATED AND REMANDED IN PART.

Judges BRYANT and ERVIN concur.