ELMORE, Judge.
 

 *95
 
 On 8 August 2014, a jury found William Miller Baker (defendant) guilty of attempted first-degree rape of a child and taking indecent liberties with a child. Based on defendant's prior record level IV, the trial court sentenced defendant to an active term of 240 to 297 months imprisonment. On appeal, defendant argues that the trial court erred in denying his motion to dismiss the attempted rape charge. Because the evidence of attempted rape was insufficient to submit to the jury, we vacate defendant's conviction for attempted first-degree rape of a child and remand for new sentencing.
 

 I. Background
 

 On 29 October 2013, defendant was indicted in superseding indictments for first-degree rape of a child in violation of N.C. Gen.Stat. § 14-27.2A(a), attempted first-degree rape of a child in violation of
 
 *853
 
 N.C. Gen.Stat. § 14-27.2A(a), and taking indecent liberties with a child in violation of N.C. Gen.Stat. § 14-202.1(a)(1). All offenses were alleged to have occurred on or about 1 April 2008 through 21 October 2009. The case came to trial on 7 August 2014 in Wake County Superior Court before the Honorable Paul C. Ridgeway.
 

 The child victim, Amanda,
 
 [1]
 
 testified that in the summer of 2009, she was living with her mother, her two brothers, and defendant who, at the time, was her mother's boyfriend and the father of her youngest brother. Amanda and her brothers each had their own rooms in the house. Defendant also slept in his own room, while Amanda's mother usually slept on the couch downstairs. Amanda testified that on one particular occasion, after she had gone to bed, defendant came into her room, took off his shorts, and removed Amanda's pajama shorts and underwear. Defendant touched her vagina as she was lying on her stomach, and then "put his penis in [her] vagina." Amanda began kicking her feet and screaming into the pillow, but she was unable to turn her head to scream out loud "because [defendant's] face was around
 
 *96
 
 [her] head so [she] couldn't move." At some point, Amanda's mother came into the room when defendant was still on top of Amanda, naked. Amanda had her pajama shirt on but her shorts and underwear were around her knees. The three of them went downstairs and talked, and Amanda's mother told her that she should lock her door. The next morning, Amanda noticed that she was bleeding in her vagina.
 

 Amanda also testified as to a specific incident with defendant that allegedly occurred in the fall of 2009, when she was in the sixth grade. Amanda had taken the bus home from school and was going to sit down on the couch to do her homework. As she passed by the kitchen, she noticed that defendant was there, drunk, and that there were "beer cans covering the table, on the floor, and there was glass everywhere." When she sat down on the couch, defendant came in, sat down next to her, and started touching her shoulder and chest. Defendant "tried to get [her] to lay down," and when asked at trial if she did, Amanda responded, "Sort of. And then I don't know what happened because he fell asleep so I moved." When defendant sat up, Amanda grabbed the phone, ran to her room, went into the closet, and called her mother. She told her mother, "He's touching me. Can you please come and get me[?]" Her mother then sent Amanda's grandparents to the house to pick her up.
 

 Amanda first disclosed the alleged incidents to her aunt who, in turn, reported the allegations to Wake County Child Protective Services (CPS). Danielle Doyle, an investigator with Wake County CPS, was assigned to the case. Doyle coordinated with Peggy Marchant, a detective with the Cary Police Department, and visited Amanda at her school to conduct an interview. Amanda told Doyle and Marchant that defendant had fondled her breast, her genital area, and had tried to insert his penis into her vaginal area. At that point, Doyle stopped the interview and referred Amanda to the SafeChild Advocacy Center for further questioning and evaluation.
 

 On 21 November 2011, Sara Kirk, a child abuse evaluation specialist at the SafeChild Advocacy Center, conducted an interview with Amanda as part of her child medical evaluation. During the interview, Amanda told Kirk that a couple of years earlier, defendant had touched her in her "private places" and that one time, "he tried to put his private in [hers]." Amanda recounted the couch incident and the bedroom incident, and when asked if defendant's private part went inside her private part in the bedroom, Amanda paused and said, "I don't think it did." A video recording of the interview was admitted into evidence as State's Exhibit 6, without objection or request for a limiting instruction.
 

 *97
 
 Holly Warner, a nurse practitioner and former child medical evaluator at SafeChild, conducted Amanda's medical evaluation immediately after the interview. Warner testified that Amanda's genital exam was normal, meaning there were no signs of recent or healed trauma to the vaginal area. The medical evaluation report, which included Warner's
 
 *854
 
 findings and a summary of Kirk's interview, was admitted into evidence as State's Exhibit 1.
 

 Jeanine Bolick, a licensed clinical social worker, was qualified and tendered as an expert in counseling and therapy. Bolick testified that Amanda participated in counseling sessions with her from 8 May 2012, until 11 June 2013, and that, based on Amanda's nightmares, her reluctance to talk about sexual abuse, and her becoming tearful when the subject came up, Bolick diagnosed Amanda with post-traumatic stress disorder (PTSD). Bolick also acknowledged, however, that she did not observe symptoms specific to sexual abuse, and that PTSD could be caused by a number of other factors.
 

 Defendant testified in his own defense at trial. He denied that he ever tried to put his penis in Amanda's vagina or that he had ever gone into her room for that purpose. He also denied that there was a time when Amanda was in sixth grade that she came home from school and he was in the house. Defendant claimed that he never touched Amanda inappropriately.
 

 At the close of the evidence, defendant moved to dismiss all charges against him. The trial court denied defendant's motion, and the three charged offenses were submitted to the jury. The jury found defendant guilty of attempted first-degree rape with a child and indecent liberties of a child. However, the jury was unable to reach a verdict on the charge of first-degree rape of a child, and a mistrial was declared on that count. The offenses were consolidated for judgment, and the trial court sentenced defendant to a minimum of 240 months and a maximum of 297 months imprisonment. Defendant appeals.
 

 II. Discussion
 

 Defendant argues that the trial court erred in denying his motion to dismiss at the close of the evidence because there was insufficient evidence to support the charge of attempted first-degree rape of a child. We agree.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo.
 
 "
 
 State v. Smith,
 

 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court is
 
 *98
 
 whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' "
 
 State v. Fritsch,
 

 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (quoting
 
 State v. Barnes,
 

 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ),
 
 cert. denied,
 

 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith,
 

 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose,
 

 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied,
 

 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995).
 

 N.C. Gen.Stat. § 14-27.2A(a) (2013) provides, "A person is guilty of rape of a child if the person is at least 18 years of age and engages in vaginal intercourse with a victim who is a child under the age of 13 years." "Vaginal intercourse is defined as 'penetration, however slight, of the female sex organ by the male sex organ.' "
 
 State v. Combs,
 

 226 N.C.App. 87
 
 , 90,
 
 739 S.E.2d 584
 
 , 586 (quoting
 
 State v. Fletcher,
 

 322 N.C. 415
 
 , 424,
 
 368 S.E.2d 633
 
 , 638 (1988) ),
 
 disc. rev. denied,
 

 366 N.C. 596
 
 ,
 
 743 S.E.2d 220
 
 (2013).
 

 Pursuant to N.C. Gen.Stat. § 15-170 (2013), a defendant may be convicted of the crime charged in the indictment, "or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime." "In order to prove an attempt of any crime, the State must show: '(1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense.' "
 
 State v. Sines,
 

 158 N.C.App. 79
 
 , 85,
 
 579 S.E.2d 895
 
 , 899 (quoting
 
 *855
 

 State v. Miller,
 

 344 N.C. 658
 
 , 667,
 
 477 S.E.2d 915
 
 , 921 (1996) ),
 
 cert. denied,
 

 357 N.C. 468
 
 ,
 
 587 S.E.2d 69
 
 (2003).
 

 In a prosecution for attempted rape, "[t]he State is not required to show that the defendant made an actual physical attempt to have intercourse...."
 
 State v. Schultz,
 

 88 N.C.App. 197
 
 , 200,
 
 362 S.E.2d 853
 
 , 855 (1987) (citing
 
 State v. Hudson,
 

 280 N.C. 74
 
 , 77,
 
 185 S.E.2d 189
 
 , 191 (1971),
 
 cert. denied,
 

 414 U.S. 1160
 
 ,
 
 94 S.Ct. 920
 
 ,
 
 39 L.Ed.2d 112
 
 (1974) ),
 
 aff'd per curiam,
 

 322 N.C. 467
 
 -68,
 
 368 S.E.2d 386
 
 (1988). The intent element is satisfied "if the evidence shows that defendant, at any time during the incident, had an intent to gratify his passion upon the victim, notwithstanding
 
 *99
 
 any resistance on her part."
 

 Id.
 

 (citing
 
 State v. Moser,
 

 74 N.C.App. 216
 
 , 220,
 
 328 S.E.2d 315
 
 , 317 (1985) ). "Intent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence, it must ordinarily be proven by circumstantial evidence, i.e., by facts and circumstances from which it may be inferred."
 
 State v. Gammons,
 

 260 N.C. 753
 
 , 756,
 
 133 S.E.2d 649
 
 , 651 (1963) (citations omitted).
 

 Both defendant and the State agree that there are only two events upon which the attempted rape conviction could be based: the bedroom incident and the couch incident. As to the bedroom incident, defendant argues that Amanda's in-trial testimony, if believed, could support a conviction for first-degree rape but not for attempt, and conversely, that Amanda's interview with Kirk could support a conviction for attempted rape but not for the completed offense. Defendant also claims that the interview was admitted solely for corroborative or impeachment purposes, and accordingly, the only substantive evidence of the bedroom incident, Amanda's testimony at trial, is insufficient to support a conviction for attempted rape. As to the couch incident, defendant contends that Amanda's in-trial testimony could, at most, support the indecent liberties conviction. Therefore, while there may have been substantial evidence for the jury to find defendant guilty of rape, based on the bedroom incident, and of taking indecent liberties with a child, based on the couch incident, there was insufficient evidence to support his conviction for attempted rape.
 

 Defendant's argument first assumes that the video-taped interview was admitted to corroborate or impeach Amanda's in-trial testimony, but not as substantive evidence of the bedroom incident. In support of his position, defendant points to the trial court's final charge to the jury, which includes the following instruction on impeachment or corroboration by a prior statement:
 

 Evidence has been received tending to show that at an earlier time a witness made a statement that may conflict or be consistent with the testimony of the witness at trial. You must not consider such earlier statements as evidence of the [truth of] what was said at the earlier time because it was not made here under oath at this trial. If you believe the earlier statement was made and that it conflicts with the testimony of the witness at this trial, you may consider it and all of the facts bearing on the witness's truthfulness in deciding whether you will believe or disbelieve a witness's testimony.
 

 *100
 
 At trial, the State did not specify the purpose for which the video was being offered. On appeal, however, the State concedes that the video was not admitted as substantive evidence. Therefore, while Amanda's corroborated testimony about the bedroom incident could support a conviction for a completed rape, the State failed to present any substantive evidence of attempted rape.
 
 See
 

 State v. Batchelor,
 

 190 N.C.App. 369
 
 , 373-75,
 
 660 S.E.2d 158
 
 , 162 (2008) (finding no substantive evidence of defendant's guilt where jury's consideration of hearsay testimony was limited to impeachment based on trial court's final instruction regarding prior inconsistent statements).
 

 Nevertheless, the State argues that even if there was insufficient evidence from the bedroom incident to support defendant's attempted rape conviction, Amanda's testimony regarding the couch incident was sufficient to do so. We disagree.
 

 Amanda's in-trial testimony, in which she described the couch incident, tended to show that defendant, who appeared drunk, sat down next to Amanda on the couch, touched
 
 *856
 
 Amanda's shoulder and chest, and tried to get Amanda to lie down. Amanda testified that she "sort of" lay down, but then defendant fell asleep, so she moved. In the light most favorable to the State, this evidence may be sufficient to show that defendant acted "for the purpose of arousing or gratifying sexual desire" under the indecent liberties statute, N.C. Gen.Stat. § 14-202.1(a) (2013), but it does not support an inference that he intended to rape Amanda. Nor are we persuaded by the State's attempt to analogize these facts to those more egregious cases in which evidence of assault with intent to rape or attempted rape was found to be legally sufficient.
 
 See, e.g.,
 

 State v. Whitaker,
 

 316 N.C. 515
 
 , 519,
 
 342 S.E.2d 514
 
 , 517 (1986) (finding sufficient evidence of kidnapping to facilitate attempted second-degree rape where the defendant grabbed the victim by the throat, ordered her to drive to a secluded area, told her, "I want to eat you," and commanded her to pull her pants down to her knees);
 
 Schultz,
 

 88 N.C.App. at 201
 
 ,
 
 362 S.E.2d at 856
 
 (finding sufficient evidence of intent to rape where the victim testified that the defendant "dragged her down a hallway toward a guest bedroom, and that he put his hand down over her shoulder and down the front of her shirt and grabbed her breasts");
 
 State v. Hall,
 

 85 N.C.App. 447
 
 , 453,
 
 355 S.E.2d 250
 
 , 254 (1987) (finding sufficient evidence of attempted rape where the defendant, "who had just been released from prison after serving a sentence for assault with intent to rape," took no interest in the victim's wallet or car, "wrapped his arm around the victim's neck, pulled her shirt down, touched her breasts with his hands, and physically abused her").
 
 *101
 

 III. Conclusion
 

 We conclude that the trial court erred in denying defendant's motion to dismiss the charge against defendant for attempted first-degree rape of a child. The State failed to present substantial evidence of all elements of attempted rape based on either the bedroom incident or the couch incident. As this issue is dispositive, we need not address defendant's second argument. Defendant's conviction for attempted first-degree rape of a child is vacated and the case remanded for new sentencing. Defendant's conviction for indecent liberties remains undisturbed.
 

 VACATED IN PART AND REMANDED; NEW SENTENCING.
 

 Judges CALABRIA and ZACHARY concur.
 

 [1]
 

 We use this pseudonym to protect the identity of the minor child.