IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-364

 Filed: 3 December 2019

Johnston County, No. 16 CRS 56785

STATE OF NORTH CAROLINA

 v.

DATREL K’CHAUN LYONS, Defendant

 Appeal by Defendant from judgments entered 24 September 2018 by Judge

Imelda Pate in Johnston County Superior Court. Heard in the Court of Appeals 29

October 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Neil
 Dalton, for the State.

 James R. Parish for Defendant-Appellant.

 INMAN, Judge.

 Datrel K’Chaun Lyons (“Defendant”) appeals from judgments entered

following a jury’s verdict finding him guilty of attempted first degree murder and

conspiracy to commit attempted first degree murder. Defendant argues that: (1) the

conspiracy charge as set forth in the indictment is invalid, as it alleges a non-existent

crime; (2) the trial court erred in denying his motion to dismiss both charges for

insufficiency of the evidence; and (3) the trial court erred in finding duplicative

aggravating circumstances at sentencing. After careful review, we hold that the
 STATE V. LYONS

 Opinion of the Court

indictment for conspiracy is valid and the trial court did not commit error in denying

Defendant’s motion to dismiss. We dismiss the portion of Defendant’s appeal

pertaining to his sentencing for lack of jurisdiction.

 I. FACTUAL AND PROCEDURAL BACKGROUND

 The evidence presented at trial tended to show the following:

 On 24 October 2016, at approximately 9:30 p.m., two men robbed a Hardee’s

restaurant in Princeton, North Carolina as the employees were cleaning up and

closing for the night. Ms. Ricks, the manager, was in her office doing bookkeeping for

the day when she heard the alarm go off; suddenly, an unknown man appeared beside

her, pointed a gun at her, and demanded she give him money. Ms. Ricks complied

with his demand.

 Ms. Ricks also observed a second man demanding that one of the cashiers open

a cash drawer. Ms. Ricks explained to the robbers that the cashier could not open the

cash drawer, but that she could. She then walked over and opened the drawer for

them. Inside the drawer were rolls of coins and a burgundy BB&T bank cash bag

containing approximately $500. One man took the BB&T bag and several rolls of

coins and threw them into a “bookbag.” The men then left the Hardee’s and drove

away in a Chevrolet Sonic vehicle. Ms. Ricks locked the doors and called the police.

 At the time of the robbery, Johnston County Sheriff’s Deputy Adriane Stone

was driving a patrol car throughout the county. Sometime after the armed robbery

 -2-
 STATE V. LYONS

 Opinion of the Court

was reported, Deputy Stone was driving on Cleveland Road when a car careened

toward her at 78 to 79 miles per hour in a 55 mile per hour zone. Deputy Stone slowed

to a stop and turned her emergency lights on, hopeful that the other car would slow

down or stop. When the speeding car did not stop, Deputy Stone turned her vehicle

around to give chase. Deputy Stone called dispatch and provided the license plate

number of the vehicle, later identified as a Chevrolet Sonic, and reported she was

making a traffic stop. She had no idea at that time that the vehicle was connected

with the armed robbery at the Hardee’s.

 At one point during the pursuit, the Sonic slowed down suddenly and pulled

over onto the shoulder of the road. Deputy Stone rolled to a stop behind the Sonic

and exited her vehicle. After she did so, the Sonic sped away. Deputy Stone resumed

the chase and called on the radio for back up. As the pursuit continued, the Sonic

made a sudden stop a second time. Deputy Stone again stopped close behind.

 After she had stopped, Deputy Stone observed a man, later identified as

Defendant, lean his torso out of the back window of the Sonic and point a gun directly

at her face. Deputy Stone immediately ducked behind her dashboard, heard a

gunshot, and shifted her car into reverse. The driver of the Sonic then fled the scene.

Deputy Stone, meanwhile, called dispatch to report shots fired, gathered her resolve,

and resumed the chase.

 -3-
 STATE V. LYONS

 Opinion of the Court

 Deputy Stone caught up to the fleeing Sonic and watched as it came to a stop

at the end of a cul-de-sac. She parked her patrol car behind the Sonic, drawing her

service pistol as she stepped out of the vehicle. The driver of the Sonic then turned

around and drove the vehicle towards her. Deputy Stone fired 3-5 shots, striking the

car. After the Sonic passed, Deputy Stone got back into her vehicle and heard another

officer, Deputy Michael Savage, announce over the radio that the Sonic had crashed.

 Deputy Savage arrived on the scene shortly after Deputy Stone had discharged

her weapon, and observed that the Sonic had crashed into a mailbox off the side of

the road. He saw three men jump out of the car and run into nearby woods. He called

for help and Deputy Stone arrived a short time later. The two officers discussed what

to do next and began to search inside the Sonic for firearms. They discovered a pellet

gun in the backseat and a black Berretta pistol on the floorboard of the front

passenger seat.

 Clayton Police K-9 Officer Justin Vause arrived at the crash site. As he was

approaching the site, he observed a man running into the woods. Officer Vause exited

his vehicle and loudly warned the fleeing man that he was preparing to release his

dog, Major, to find and subdue him. That man, later identified as Defendant, replied,

“I’m over here, sir[,]” and surrendered, at which time Officer Vause arrested him.

Officer Vause and Major then began to track a scent from the crashed Sonic, which

 -4-
 STATE V. LYONS

 Opinion of the Court

eventually led them back to the woods where Defendant was arrested. Major

searched the area and discovered a brown BB&T bank bag filled with money.

 Believing the remaining suspects were in the nearby wooded area, law

enforcement officers established a perimeter and deployed another tracking canine

and a thermal imaging camera. They soon located another suspect, later identified

as Gerald Holmes. Mr. Holmes did not initially cooperate with the police, but was

quickly subdued by Major. Law enforcement later identified Antonio Pratt as the

third suspect and arrested him several weeks after the chase.

 Defendant was indicted on 7 November 2016 on charges of attempted first

degree murder and conspiracy to commit attempted first degree murder.

 At trial, Deputy Stone, Deputy Savage, Officer Vause, and Mr. Pratt testified

to the events of the evening in detail. Describing the police chase, Mr. Pratt testified

that when he first saw Deputy Stone’s car, he began to panic because he was speeding

and did not have a driver’s license. He further testified that, at one point during the

chase, Mr. Holmes told him to pull over; when he did, he heard Mr. Holmes yell to

Defendant, “Shoot, bro. Shoot.” Mr. Pratt testified that he then heard a loud boom,

which he identified as a gunshot.

 At the close of the State’s evidence, Defendant moved to dismiss all claims for

insufficiency of the evidence. That motion was denied. Defendant offered no

evidence, and the jury found Defendant guilty on both charges. After the verdict was

 -5-
 STATE V. LYONS

 Opinion of the Court

announced, Defendant admitted to the existence of three aggravating factors as part

of a plea bargain. The trial court sentenced Defendant to 157 to 201 months

imprisonment for attempted first degree murder and a consecutive sentence of 73 to

100 months imprisonment for conspiracy to commit attempted first degree murder.

Both sentences fell at the top of the presumptive range and overlapped with the

bottom of the aggravated range. Defendant gave notice of appeal in open court.

 II. ANALYSIS

A. Standard of Review

 We review challenges to the validity of indictments de novo. State v. Billinger,

213 N.C. App. 249, 255, 714 S.E.2d 201, 206 (2011). To be valid, “an indictment must

allege every essential element of the criminal offense it purports to charge.” State v.

Courtney, 248 N.C. 447, 451, 103 S.E.2d 861, 864 (1958). An indictment that falls

short of this standard fails to confer subject-matter jurisdiction on the trial court.

Billinger, 213 N.C. App. at 255, 714 S.E.2d at 206.

 The de novo standard also applies to our review of a trial court’s denial of a

motion to dismiss for insufficiency of the evidence. Id. at 253, 714 S.E.2d at 205. We

“determine whether the State has presented substantial evidence (1) of each essential

element of the offense, and (2) of the defendant’s being the perpetrator.” Id. at 252-

53, 714 S.E.2d at 204-05 (citations omitted). We view the evidence “in the light most

favorable to the State, giving the State the benefit of every reasonable inference and

 -6-
 STATE V. LYONS

 Opinion of the Court

resolving any contradictions in its favor.” State v. Rose, 339 N.C. 172, 192, 451 S.E.2d

211, 223 (1994).1

B. Conspiracy to Commit Attempted Murder

 Defendant contends that the indictment charging him with conspiracy “to

commit the felony of Attempted First Degree Murder, [N.C. Gen. Stat. §] 14-17

against Adriane Stone” is invalid, as it alleges he conspired to commit a crime that

does not exist. Whether conspiracy to commit attempted first degree murder is a

crime is an issue of first impression for this Court, and presents, Defendant argues,

“an illogical impossibility and a legal absurdity[,]” insofar as it would criminalize

agreements not to commit murder. Though this argument does appear convincing at

first blush, a full examination of the common law surrounding both conspiracy and

attempted first degree murder lead us to hold that the indictment is valid.

 At the outset, we note that the indictment alleges the elements of criminal

conspiracy as a technical matter. “A criminal conspiracy is an agreement between

two or more persons to do an unlawful act or to do a lawful act in an unlawful way or

by unlawful means.” State v. Bindyke, 288 N.C. 608, 615, 220 S.E.2d 521, 526 (1975)

(citations omitted). Attempted first degree murder is most certainly a crime. State

 1 At oral argument, Defendant conceded that he could not appeal his sentence as a matter of
right under N.C. Gen. Stat. § 15A-1444(a1) (2019), and requested instead that we invoke Rule 2 of the
North Carolina Rules of Appellate Procedure, treat his appeal as a petition for writ of certiorari, grant
that petition, and reach the issue on the merits. We decline to invoke Rule 2 and dismiss that portion
of his appeal.

 -7-
 STATE V. LYONS

 Opinion of the Court

v. Collins, 334 N.C. 54, 59, 431 S.E.2d 188, 191 (1993). Thus, from a purely formulaic

perspective, the indictment alleges both elements of conspiracy: (1) an agreement

between Mr. Holmes and Defendant; (2) to commit an unlawful act, i.e., attempted

first degree murder. Cf. United States v. Clay, 495 F.2d 700, 710 (7th Cir. 1974)

(holding an indictment alleging conspiracy to attempt to break into a bank was valid

because the general federal criminal conspiracy statute required “the object

alleged . . . be an offense against the United States” and a specific criminal statute

recognized attempted bank robbery as just such an offense).

 To ultimately convict a defendant of conspiracy, however, “the State must

prove there was an agreement to perform every element of the underlying offense[,]”

State v. Dubose, 208 N.C. App. 406, 409, 702 S.E.2d 330, 333 (2010) (citation omitted),

and the “elements of an attempt to commit any crime are: (1) the intent to commit

the substantive offense, and (2) an overt act done for that purpose which goes beyond

mere preparation, but (3) falls short of the completed offense.” State v. Melton, ___

N.C. ___, ___, 821 S.E.2d 424, 428 (2018).2 The phrase “conspiracy to commit

attempted first degree murder” sounds discordant to the lawyerly ear because it

suggests the conspirators must have intended to fail to commit a crime. While two

 2 We note that decisions by our Supreme Court do not consistently identify failure as a discrete
third element of attempt. See, e.g., State v. Powell, 277 N.C. 672, 678, 178 S.E.2d 417, 421 (1971) (“The
two elements of an attempt to commit a crime are: (1) An intent to commit it, and (2) an overt act done
for that purpose, going beyond mere preparation, but falling short of the completed offense.” (emphasis
added) (citations omitted)).

 -8-
 STATE V. LYONS

 Opinion of the Court

or more people who collude to “make an attempt on” another’s life or agree to “try”

and kill someone have engaged in a criminal conspiracy, an indictment alleging a

conspiracy “to commit the felony of Attempted First Degree Murder” strikes a less

natural tone.

 The State argues intent to fail is not in actuality an essential element of

conspiracy to commit attempted first degree murder, contending that if the

implication of an intent to fail is removed, so too is any disharmony in the indictment.

 Crucially, conspiracy is a common law crime in North Carolina, State v. Arnold,

329 N.C. 128, 142, 404 S.E.2d 822, 830 (1991), as is attempted first degree murder.

Collins, 334 N.C. at 59, 431 S.E.2d at 191 (recognizing, apparently for the first time

outside of dicta, the existence of the crime). We may hold failure is not an essential

element of conspiracy to commit attempted first degree murder—as a species of the

common law crime of conspiracy—if our Supreme Court’s precedents so indicate. Cf.

State v. Freeman, 302 N.C. 591, 594, 276 S.E.2d 450, 452 (1981) (holding the Supreme

Court “possesses the authority to alter judicially created common law when it deems

it necessary”); State v. Lane, 115 N.C. App. 25, 30, 444 S.E.2d 233, 237 (1994)

(observing that this Court lacks the authority to modify or abandon the accepted

common law).

 -9-
 STATE V. LYONS

 Opinion of the Court

 Numerous decisions from our Supreme Court support the conclusion that

failure is not strictly necessary to complete the crime of attempt.3 In State v. Baker,

369 N.C. 586, 799 S.E.2d 816 (2017), a defendant was tried and convicted of

attempted rape, even though the substantial evidence introduced at trial showed that

the rape was completed. 369 N.C. at 592-93, 799 S.E.2d at 820. This Court held that

the trial court erred in denying the defendant’s motion to dismiss that charge,

reasoning that “while there may have been substantial evidence for the jury to find

defendant guilty of rape . . . there was insufficient evidence to support his conviction

for attempted rape.” State v. Baker, 245 N.C. App. 94, 99, 781 S.E.2d 851, 855 (2016).

Our Supreme Court reversed that decision and held that “evidence of a completed

rape is sufficient to support an attempted rape conviction.” Baker, 369 N.C. at 597,

799 S.E.2d at 823.

 Although the Supreme Court recited the elements of attempt as including

failure, it also favorably cited State v. Primus, 227 N.C. App. 428, 430-32, 742 S.E.2d

310, 312-13 (2013), in which we “rejected the defendant’s argument that guilt of the

crime of attempted larceny requires that the defendant’s act supporting the attempt

charge fall short of the competed offense in order to be sufficient to support an

attempt conviction, a conclusion that accords with the modern view concerning

 3Stated differently, the cases discussed infra suggest that a successful premeditated killing of
a human being is a necessary element of first degree murder, but not for attempted first degree
murder.

 - 10 -
 STATE V. LYONS

 Opinion of the Court

criminal liability for attempt.” Baker, 369 N.C. at 596-97, 799 S.E.2d at 823 (citing 2

Wayne R. LaFave, Substantive Criminal Law § 11.5, at 230 (2d ed. 2003)).

 It also favorably quoted this Court’s statement in State v. Canup, 117 N.C.

App. 424, 451 S.E.2d 9 (1994), that “ ‘nothing in the philosophy of juridicial [sic]

science requires that an attempt must fail in order to receive recognition.’ ” Baker,

369 N.C. at 596, 799 S.E.2d at 822 (quoting Canup, 117 N.C. App. at 428, 451 S.E.2d

at 11). Thus, Baker suggests that while failure precludes a conviction for a completed

crime, it is not necessary to support a conviction for criminal attempt of that same

crime.

 Such an understanding is consistent with the common law’s treatment of

attempted first degree murder as a lesser included offense of first degree murder. See

Collins, 334 N.C. at 59, 431 S.E.2d at 191 (recognizing attempted murder as a lesser

included offense of murder). Our Supreme Court has long employed “a definitional

test for determining whether one crime is a lesser included offense of another crime.”

State v. Nickerson, 365 N.C. 279, 281, 715 S.E.2d 845, 846 (2011) (citing State v.

Weaver, 306 N.C. 629, 635, 295 S.E.2d 375, 377 (1982)). “[T]he test is whether the

essential elements of the lesser crime are essential elements of the greater crime. If

the lesser crime contains an essential element that is not an essential element of the

greater crime, then the lesser crime is not a lesser included offense.” Nickerson, 365

N.C. at 282, 715 S.E.2d at 847. “In other words, all of the essential elements of the

 - 11 -
 STATE V. LYONS

 Opinion of the Court

lesser crime must also be essential elements included in the greater crime.” Weaver,

306 N.C. at 635, 295 S.E.2d at 379 (emphasis added), overruled in part on other

grounds by Collins, 334 N.C. at 61, 431 S.E.2d at 193.

 Thus, a conclusion that failure to kill is an essential and necessary element of

attempted first degree murder cannot be squared with the definition of a lesser

included offense, as failure is most certainly not an element of the greater offense of

a completed first degree murder. Cf. State v. Coble, 351 N.C. 448, 449, 527 S.E.2d 45,

47 (2000) (reciting the elements of both first degree murder and the lesser included

offense of attempted first degree murder).

 Other states have held conspiracy to commit an attempted crime is a

cognizable offense where the common law crime of attempt does not require failure

as an essential element. As pointed out by Defendant,4 Maryland recognizes the

existence of the crime of conspiracy to attempt first degree murder. Stevenson v.

State, 423 Md. 42, 52 (2011) (“ ‘[C]onspiracy to attempt a first degree murder’ is a

cognizable offense.” (citing Townes v. State, 314 Md. 71 (1988)). In Townes,

Maryland’s highest appellate court reviewed an indictment for “conspiracy to attempt

to commit the crime of obtaining money by false pretenses[,]” which it held charged a

 4 Defendant cites to an unpublished decision of Maryland’s intermediate appellate court,
Knuckles v. State, 2018 WL 2113969 (Md. Ct. Spec. App. May 8, 2018), for this proposition. Knuckles,
however, relied exclusively on published cases from Maryland’s highest court. Our discussion,
therefore, focuses on those published cases rather than on Knuckles itself.

 - 12 -
 STATE V. LYONS

 Opinion of the Court

valid crime. 314 Md. at 75. The court in Townes first recognized that the indictment

was technically sufficient to allege conspiracy:

 If we mechanically assemble the building blocks of the
 crime of conspiracy in the context of this case, it would
 seem that the crime of conspiracy to attempt to commit the
 crime of obtaining money by false pretenses fits the
 established mold. Obtaining money by false pretenses is a
 crime. Attempting to obtain money by false pretenses is a
 separate, self-standing crime. Accordingly, if a criminal
 conspiracy consists of an agreement to commit a crime, and
 an attempt to obtain money by false pretenses is a crime,
 it follows that the crime of conspiracy to attempt to obtain
 money by false pretenses fits the legal definition of
 conspiracy.

Id. at 75-76 (citations omitted). The court in Townes then went on to address and

reject as inapplicable the argument—also presented in this case—that one cannot

criminally intend not to complete a crime:

 Townes’ argument fails to take into consideration an
 established principle of Maryland law. In this State, unlike
 a minority of other states, failure to consummate the
 intended crime is not an essential element of an attempt.
 ....
 The logical inconsistency postulated by Townes simply
 does not exist in this State. A person intending to commit
 a crime intends also to attempt to commit that crime. The
 intent to attempt is viewed as correlative to and included
 within the intent to consummate. Accordingly, one who
 conspires to commit a crime concurrently conspires to
 attempt to commit that crime.

Id. at 76-77 (citations omitted).

 - 13 -
 STATE V. LYONS

 Opinion of the Court

 Our Supreme Court’s decisions recounted supra align with the reasoning

espoused in Townes. Cf. Baker, 369 N.C. at 596, 799 S.E.2d at 822 (holding evidence

of a completed rape is sufficient to support a conviction for attempted rape in part

because “ ‘[t]he completed commission of a crime must of necessity include an attempt

to commit the crime’ ” (quoting Canup, 117 N.C. App. at 428, 451 S.E.2d at 11)

(alteration in original)).

 Although Defendant relies on several decisions by other courts that have

reached the opposite result, those decisions all arose in jurisdictions where either the

crimes in question were statutorily delineated or failure was considered by the

deciding court to be a necessary element of conspiracy to attempt. See, e.g., People v.

Iniguez, 96 Cal. App. 4th 75, 79 (2002) (holding conspiracy to commit attempted

murder was not a crime where the attempt statute provided “ ‘[e]very person who

attempts to commit any crime, but fails, . . .’ is guilty of a crime” (citation omitted));

Wilhoite v. State, 7 N.E.3d 350, 353 (Ind. Ct. App. 2014) (relying on Iniguez to hold

that conspiracy to commit attempted robbery was not a cognizable crime because

“colloquially speaking, to ‘attempt’ a crime is to ‘try’ without actually completing the

crime” (citation omitted)); United States v. Meacham, 626 F.2d 503, 509 n.7 (5th Cir.

1980) (distinguishing Clay, holding that Congress did not intend to create a crime of

conspiracy to attempt to commit federal drug crimes under 21 U.S.C. §§ 846 & 963,

and observing that conspiracy to attempt to fail is “the height of absurdity”).

 - 14 -
 STATE V. LYONS

 Opinion of the Court

 In short, given that failure need not actually be shown or proven to convict a

defendant of attempt, Baker, 369 N.C. at 596, 799 S.E.2d at 822, and that attempted

first degree murder is a lesser included offense of first degree murder, Collins, 334

N.C. at 59, 431 S.E.2d at 191, the charge of conspiracy to commit attempted first

degree murder does not require the state to prove defendant intended to fail to

commit the attempted crime itself. As a result, we hold that conspiracy to commit

attempted first degree murder is a cognizable offense and, with all other elements of

conspiracy appearing in the indictment, was adequately charged in this case.

C. Motion to Dismiss

 Defendant next argues that the trial court erred in denying his motion to

dismiss all charges for insufficiency of the evidence, contending that the evidence

shows only that he fired a pellet gun in an attempt to scare Deputy Stone away. Such

evidence, Defendant contends, defeats every element of attempted first degree

murder. Defendant also applies that same argument to the conspiracy charge and

reasserts that the State was required to—and could not—prove an intent to fail.

 Defendant is incorrect in his claim that the evidence shows only that he fired

a pellet gun with an intent to scare off Deputy Stone. Deputy Stone testified that she

saw Defendant point a gun at her face and that she heard a gunshot after ducking

behind her dashboard. Though it is true that she did not directly observe where the

gun was pointed at the time it was fired, she further testified that this series of events

 - 15 -
 STATE V. LYONS

 Opinion of the Court

happened “fast[,]” and testified on cross-examination that “once I saw the gun at my

face, I yelled out, ‘Oh, s--t,’ and I started to go down. . . . [A]s I’m going down, I hear

the gunshot.”

 While it is possible that the gun was not pointed at Deputy Stone when

Defendant pulled the trigger, the jury could draw a reasonable inference from Deputy

Stone’s testimony to find the gun remained pointed at her when she heard it seconds

later. Contrary to Defendant’s argument, such an inference is no less reasonable

because Deputy Stone took quick evasive action in the interest of self-preservation.

Mr. Pratt, who was the getaway driver during the chase, also provided the following

testimony indicating that Defendant discharged a firearm rather than a pellet gun:

“I heard [Mr. Holmes] say ‘Shoot, bro. Shoot.’ . . . He had to be talking to

[Defendant]. . . . I just looked at Holmes. I heard [a] boom. . . . I want to say

[Defendant] fired the shot.”

 Further, Mr. Pratt was unequivocal in his testimony that Mr. Holmes did not

have a gun in his hand when the shot rang out. Our standard of review on a motion

to dismiss compels us to adopt the reasonable inference most favorable to the State

from this evidence, Rose, 339 N.C. at 192, 451 S.E.2d at 223, which, in this case, is

an inference that Defendant aimed and fired a gun at Deputy Stone following

instruction from Mr. Holmes. Defendant’s argument is overruled.

 - 16 -
 STATE V. LYONS

 Opinion of the Court

 We likewise hold that the trial court did not err in denying the motion to

dismiss as to the conspiracy charge. The jury could reasonably infer Defendant, in a

conspiracy with Mr. Holmes, attempted to kill Deputy Stone by firing a gun at her.

Because intentional failure is not necessary to a charge of conspiracy to commit

attempted murder, as explained supra, the State was not required to demonstrate

Defendant intended to fail in his attempt to take Deputy Stone’s life. Defendant’s

argument on this point is likewise overruled.

D. Sentencing

 At oral argument, Defendant conceded that he could not appeal his sentences

as a matter of right under N.C. Gen. Stat. § 15A-1444(a1) (2019), and requested

instead that we invoke Rule 2 of the North Carolina Rules of Appellate Procedure,

treat his appeal as a petition for writ of certiorari, grant that petition, and reach the

issue on the merits. We decline to invoke Rule 2 and dismiss that portion of his

appeal. See State v. Daniels, 203 N.C. App. 350, 354-55, 691 S.E.2d 78, 81-82 (2010)

(dismissing a defendant’s appeal from sentencing under

N.C. Gen. Stat. § 15A-1444(a1) when defendant’s sentence in the presumptive range

nonetheless overlapped with the aggravated range).

 III. CONCLUSION

 We hold the indictment in this case validly charged Defendant with a criminal

conspiracy. The evidence introduced at trial was sufficient to submit both charges of

 - 17 -
 STATE V. LYONS

 Opinion of the Court

attempted murder and conspiracy to the jury. Defendant’s appeal from sentencing is

dismissed for want of jurisdiction. We find no error in the jury’s verdicts or in the

judgments entered thereon.

 DISMISSED IN PART; NO ERROR IN PART.

 Judge TYSON concurs.

 Judge BERGER concurs by separate opinion.

 - 18 -
 STATE V. LYONS

 Opinion of the Court

No. COA 19-364 – State v. Lyons

 BERGER, Judge, concurring in separate opinion.

 I concur with the majority. However, I write separately because I would reach

the same result through different reasoning.

 “[T]he primary purpose of an indictment is to enable the accused to prepare for

trial.” State v. Silas, 360 N.C. 377, 382, 627 S.E.2d 604, 607 (2006) (citation and

quotation marks omitted). “The indictment must also enable the court to know what

judgment to pronounce in case of conviction.” State v. Nicholson, 78 N.C. App. 398,

401, 337 S.E.2d 654, 657 (1985) (citation and quotation marks omitted). It is well-

settled in North Carolina that any allegations in an indictment beyond those

essential to the crime sought to be charged “are irrelevant and may be treated as

mere surplusage.” State v. Bowens, 140 N.C. App. 217, 224, 535 S.E.2d 870, 875

(2000). So long as surplusage contained within an indictment does not prejudice the

defendant, such language can properly be ignored. State v. Freeman, 314 N.C. 432,

436, 333 S.E.2d 743, 745-46 (1985).

 “A criminal conspiracy is an agreement between two or more persons to do an

unlawful act or to do a lawful act by unlawful means.” State v. Lamb, 342 N.C. 151,

155, 463 S.E.2d 189, 191 (1995). Notably, “a conspiracy indictment need not describe

 - 19 -
 STATE V. LYONS

 Opinion of the Court

the subject crime with legal and technical accuracy because the charge is the crime

of conspiracy and not a charge of committing the subject crime.” Nicholson, 78 N.C.

App. at 401, 337 S.E.2d at 657. To convict a defendant of conspiracy, the State must

prove beyond a reasonable doubt that the defendant was member to an agreement to

perform every element of the underlying offense. State v. Dubose, 208 N.C. App. 406,

409, 702 S.E.2d 330, 333 (2010).

 The offense of first-degree murder is established and defined by Section 14-17

of the North Carolina General Statutes. N.C. Gen. Stat. § 14-17 (2017). In the

present case, Defendant was indicted for “conspir[ing] with Gerald Holmes to commit

the felony of Attempted First Degree Murder, N.C.G.S. 14-17.” Accordingly, the

indictment was sufficient to allow Defendant to prepare for trial because it contained

the two essential elements of the crime of conspiracy: (1) an agreement with Gerald

Holmes, and (2) to commit the unlawful act of first-degree murder pursuant to Section

14-17. The inclusion of the word “attempted” is irrelevant to the indictment and may

be treated as surplusage. Moreover, so long as the inclusion of the word “attempted”

in the indictment did not prejudice Defendant at trial, which it did not, this

surplusage can properly be ignored.

 For a defendant to be found guilty of the common law offense of attempted

first-degree murder, the State must prove the following elements beyond a reasonable

doubt “(1) the intent to commit [first-degree murder], and (2) an overt act done for

 - 20 -
 STATE V. LYONS

 Opinion of the Court

that purpose which goes beyond mere preparation, but (3) falls short of the completed

offense.” State v. Melton, 371 N.C. 750, 756, 821 S.E.2d 424, 428 (2018) (citation and

quotation marks omitted). At trial, following the conclusion of the State’s case-in-

chief, Defendant did not present any evidence in his own defense. Relying on the

charging indictment, the trial court subsequently instructed the jury on felonious

conspiracy to attempt first-degree murder.

 As noted by the majority, the State presented sufficient evidence by which a

reasonable juror could conclude that Defendant satisfied the first element of

conspiracy to commit attempted first-degree murder. For Defendant to satisfy this

first element, the jury was required to find, beyond a reasonable doubt, that

Defendant was member to an agreement with “the intent to commit first-degree

murder.” By necessity, then, the jury must also have found, beyond a reasonable

doubt, that Defendant participated in an agreement with the intent to perform every

element of first-degree murder. Therefore, the State satisfied its burden of proving

that Defendant was member to a conspiracy to commit first-degree murder.

 As a result of Defendant being found guilty of conspiracy to commit attempted

first-degree murder, he was sentenced for a Class C felony instead of a B2 felony.

N.C. Gen. Stat. §§ 14-2.4; 14-2.5; 14-7 (2017). Thus, Defendant is not entitled to relief

on appeal based upon the inclusion of the word “attempted” in his indictment because

 - 21 -
 STATE V. LYONS

 Opinion of the Court

the word’s inclusion did not prejudice Defendant at trial. Any error stemming from

this surplusage in the indictment was in Defendant’s favor.

 - 22 -