STATE OF NORTH CAROLINA v. JUAN JARRELLE CRUMBLEY

No. COA98-1078

(Filed 21 September 1999)

## 1. Evidence— hearsay—medical diagnosis or treatment

Hearsay statements may be admissible under N.C.G.S. § 8C-1, Rule 803(4) if those statements are made for the purpose of medical diagnosis or treatment. Factors properly considered to determine whether statements have been made for the purpose of medical diagnosis or treatment include whether the examination was requested by persons involved in the prosecution of the case, the proximity of the examination to the victim's initial diagnosis, whether the victim received a diagnosis or treatment as a result of the examination, and the proximity of the examination to the trial date. The key factor is whether the statements resulted in the child receiving medical treatment and/or diagnosis.

## 2. Evidence— hearsay—medical treatment exception—child sexual abuse victim—statements to social worker

The statements of a child sexual abuse victim to a social worker (Womble) were admissible as hearsay statements made for the purpose of medical diagnosis or treatment where Womble did not interview the child at the request of persons involved in the prosecution of defendant but as part of her duties as an emergency investigator for Social Services; the interview took place approximately twenty months prior to trial and in close proximity to the child's initial diagnosis and treatment; and, although Womble's investigation ended one day before another social worker made medical appointments for the child, Womble's role as the initial investigator played a crucial role in the process that Social Services used to determine whether to pursue medical treatment and the statements resulted in the child receiving treatment.

## 3. Evidence— hearsay—medical treatment exception—child sexual abuse victim—statements to social worker

Statements of a child sexual abuse victim to a social worker (Melendez) were admissible as hearsay statements made for the purpose of medical diagnosis and treatment where Melendez did not interview the victim at the request of anyone involved with the prosecution of defendant but as part of her duties as a social

worker; the interview took place approximately twenty months prior to trial in close proximity to the child's initial diagnosis and treatment; and the child received medical diagnosis and treatment as a result of Melendez's interviews.

### 4. Evidence— sexual abuse of child—expert testimony— admissible

The trial court did not err in a prosecution for first-degree statutory rape, first-degree statutory sexual offense, and indecent liberties by admitting testimony from a pediatrician and the Director of the Child Sexual Abuse Team at Wake Medical Center that the victim had been sexually abused where the doctor based her opinions on her own exam of the victim, extensive personal experience examining children who have been sexually abused, knowledge of child sexual abuse studies, and a colleague's notes from an interview with the child. She did not base her opinions on speculation or conjecture, but on adequate data. N.C.G.S. § 8C-1, Rule 702.

### 5. Sentencing— defendant's presence—alteration between oral rendering and written judgment

A sentence was vacated where defendant was present in open court when concurrent sentences were rendered in an oral judgment, but not when a written judgment was entered which provided that the sentences would run consecutively. This substantive change could only be made in defendant's presence, where he would have an opportunity to be heard.

Appeal by defendant from judgments dated 6 May 1998 by Judge Quentin T. Sumner in Wilson County Superior Court. Heard in the Court of Appeals 17 August 1999.

*Attorney General Michael F. Easley, by Associate Attorney General Allison Smith Corum, for the State.*

*Gibbons, Cozart, Jones, Hughes, Sallenger & Taylor, by Thomas R. Sallenger, for defendant-appellant.*

GREENE, Judge.

Juan Jarrelle Crumbley (Defendant) appeals from a jury verdict finding him guilty of taking indecent liberties with a child, first-degree statutory sex offense, and first-degree statutory rape.

The trial court rendered the following sentence in open court and in the Defendant's presence, on 6 May 1996: a minimum prison term of 19 months and maximum prison terms of 23 months for taking indecent liberties with a child; a minimum prison term of 288 months and maximum prison term of 355 months for first-degree statutory sex offense; and, a minimum prison term of 288 months and maximum prison term of 355 months for first-degree statutory rape. The trial court did not indicate whether the sentences would run consecutively or concurrently.

The trial court later entered a written and signed judgment on 6 May 1996. The written and signed judgment imposed the same length of sentence as previously rendered, but further stated the sentences would run consecutively. There is no indication in the record that Defendant was present.

The State presented evidence that on 9 September 1996 Defendant was living with his girlfriend, Teresa Crumbley (Mrs. Crumbley), and Mrs. Crumbley's seven-year-old daughter, A.J. At the time of trial Mrs. Crumbley and Defendant were married. While A.J. and Defendant were alone at their residence on 9 September 1996, Defendant came into A.J.'s bedroom and pulled off her clothes. Defendant then stuck A.J. with a nail "in [her] privates." Defendant also used his fingers to stretch her private parts "so he could really stick it [the nail] in there."

Deborah Barnes (Barnes), A.J.'s aunt, arrived at Defendant's residence on 9 September 1996 and heard A.J. screaming. When Barnes entered the residence, she saw Defendant coming out of A.J.'s bedroom while zipping up his pants. Barnes then went into A.J.'s room and found A.J. in her bed and "her panties were half up." A.J. was nervous and shaking. On 10 September 1996 Barnes reported the incident to Sherry Beard (Detective Beard), a detective for the Wilson County Sheriff's Department.

Detective Beard contacted the Wilson County Department of Social Services (Social Services) to report the incident. Social Services then contacted Brenda Womble (Womble), an emergency investigator with Social Services, to investigate the report. Womble went to Defendant's residence on 10 September 1996 to determine whether A.J.'s presence in the residence with Defendant placed her at a high risk for harm, and to determine whether A.J. should be taken into protective custody. Womble testified she interviewed A.J. at the residence, and A.J. told her Defendant "did bad things to her" and

"tries to make [her] take [her] clothes off." She also testified A.J. told her Defendant "puts his hand in her pants" when in the bedroom and in the living room. Womble determined A.J. should be separated from Defendant, and A.J. went to stay at her grandmother's home. Womble also contacted Becky Melendez (Melendez), a social worker in the Child Protective Services Unit of Social Services, and Melendez was assigned to A.J.'s case. On 10 September 1996, Womble met Melendez at A.J.'s grandmother's home and Melendez began her investigation.

Melendez interviewed A.J. on 10 September 1996 and 11 September 1996. Melendez testified A.J. told her during those interviews Defendant "had been touching her in places that he shouldn't be touching her, and she wanted it to stop." She also testified A.J. pointed to the vaginal area of a doll to indicate where Defendant had been touching her, and A.J. placed the hand of a male doll on the vaginal part of a female doll. Melendez determined from her interview A.J. would need medical treatment. Melendez therefore made an appointment for A.J. to see a sexual abuse specialist at Wake Medical Center. Since A.J. could not be seen at Wake Medical Center until 18 September 1996, Melendez also made an appointment for A.J. to see a pediatrician prior to the appointment at Wake Medical Center.

The trial court qualified Denise Everette, M.D. (Dr. Everette), a board-certified pediatrician and the Director of the Child Sexual Abuse Team at Wake Medical Center, as an expert in the field of child sexual abuse. Dr. Everette performed a physical exam on A.J. on 18 September 1996. She testified she has examined over 2500 children for sexual abuse, and her exam of A.J. revealed a narrow rim of hymen. She stated in her experience a narrow hymen in a young girl is consistent with penetration of some type. She testified she sees significant abnormal findings of a narrow hymen in 35 percent of the children she examines for sexual abuse. Of that 35 percent, approximately 20 percent have findings similar to the findings in A.J.'s case. Dr. Everette stated she could never completely rule out the possibility a child had been born with a narrow hymen.

In addition to her physical examination of A.J., Dr. Everette consulted notes from an interview of A.J. conducted by a colleague from the Child Sexual Abuse Team at Wake Medical Center. She also has reviewed the results of other doctors' studies on child sexual abuse. Dr. Everette testified in her opinion A.J. had been penetrated, and this penetration could have been digital or penile. She also testified in her opinion A.J. had been sexually abused.

The State introduced into evidence a signed statement made by Defendant on 27 November 1996 at the Wilson County Sheriff's Department. Defendant admitted in the statement he "sexually touched" A.J. on three different occasions. Defendant further admitted he had penetrated A.J. with his finger and his penis.

Defendant, however, testified he had never touched A.J. in any inappropriate way. Defendant also testified his written statement of 27 November 1996 was false, and he had given the statement in exchange for Detective Beard's promise to help him receive a lower bond.

Mrs. Crumbley testified on behalf of Defendant that she did not notice any changes in A.J. on or after 9 September 1996, and that A.J. did not disclose any abuse to her. Defendant's parents and minister testified Defendant had the reputation in the community for being a peaceful person.

---

The issues are whether: (I) the statements made by A.J. to Womble and Melendez were admissible under the Rule 803(4) hearsay exception; (II) Dr. Everette's opinions were inadmissible on the grounds they were based on speculation; and (III) the entry of a criminal sentence, in the absence of Defendant, constitutes a valid sentence.

I

[1] Defendant argues the trial court erred by allowing social workers Womble and Melendez to testify regarding hearsay statements made to them by A.J. during the course of their investigation. We disagree.

Hearsay statements may be admissible under Rule 803(4) if those statements are made for the purpose of medical diagnosis or treatment. N.C. Gen. Stat. § 8C-1, Rule 803(4) (1992). Statements made to an individual other than a medical doctor may constitute statements made for the purpose of medical diagnosis or treatment. *State v. Smith*, 315 N.C. 76, 84-85, 337 S.E.2d 833, 840 (1985) (children's statements to their grandmother regarding a sexual assault were admissible under Rule 803(4) because their statements "immediately resulted in their receiving medical treatment and diagnosis"); *see also State v. Figured*, 116 N.C. App. 1, 12, 446 S.E.2d 838, 845 (1994), *disc. review denied*, 339 N.C. 617, 454 S.E.2d 261 (1995) (child's statements to a social worker regarding sexual abuse were admissible under Rule

803(4) since the statements were made for the purpose of medical diagnosis or treatment).

Factors properly considered to determine whether statements have been made for the purpose of medical diagnosis or treatment include:

(1) whether the examination was requested by persons involved in the prosecution of the case; (2) the proximity of the examination to the victim's initial diagnosis; (3) whether the victim received a diagnosis or treatment as a result of the examination; and (4) the proximity of the examination to the trial date.

*State v. Jones*, 89 N.C. App. 584, 591, 367 S.E.2d 139, 144 (1988). The key factor to consider, however, is "whether the statements resulted in the child receiving medical treatment and/or diagnosis." *State v. Rogers*, 109 N.C. App. 491, 503, 428 S.E.2d 220, 227, *disc. review denied*, 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied*, 511 U.S. 1108, 128 L. Ed. 2d 54 (1994).

### *Womble*

**[2]** Womble did not interview A.J. at the request of persons involved in the prosecution of Defendant, but as part of her duties as an emergency investigator for Social Services. The interview took place approximately twenty months prior to trial. In addition, the interview took place in close proximity to A.J.'s initial diagnosis and treatment. *See Re Lucas*, 94 N.C. App. 442, 446, 380 S.E.2d 563, 566 (1989) (child's statements to mother admissible under Rule 803(4) when statements led to child receiving medical attention within fourteen days). Womble interviewed A.J. on 10 September 1996, and A.J. received an initial diagnosis on 18 September 1996. A.J. also received medical treatment sometime between 10 September 1996 and 18 September 1996.

Although Womble did not make any medical appointments for A.J., A.J. did receive medical diagnosis and treatment as a result of her interview with Womble. Womble conducted an initial interview of A.J. to determine whether immediate action was needed to protect A.J. Womble's initial interview revealed additional investigation was necessary, and Womble contacted Melendez to continue the investigation. Womble then met Melendez at A.J.'s grandmother's home on the evening of 10 September 1996, and Melendez took over the investigation. Although Womble's investigation ended one day before Melendez made medical appointments for A.J., Womble's role as the

initial investigator played a crucial part in the process that Social Services used to determine whether to pursue medical treatment for A.J. The statements resulted in A.J. receiving medical treatment within eight days from the date of the interview. The statements A.J. made to Womble were therefore admissible as statements made for the purpose of medical diagnosis or treatment.

### *Melendez*

[3] Melendez did not interview A.J. at the request of any persons involved with the prosecution of Defendant, but as part of her duties as a social worker in the child protective services unit of Social Services. The interview took place approximately twenty months prior to trial. In addition, the interview took place in close proximity to A.J.'s initial diagnosis and treatment. Melendez interviewed A.J. on 10 September 1996 and 11 September 1996, and A.J. received an initial diagnosis on 18 September 1996. A.J. also received treatment sometime between 10 September 1996 and 18 September 1996.

Further, A.J. received medical diagnosis and treatment as a result of Melendez's interviews with A.J. Melendez determined based on her interviews that A.J. needed medical assistance. Melendez made an appointment for A.J. to see a doctor at Wake Medical Center on 18 September 1996, and to see a pediatrician sometime between 10 September 1996 and 18 September 1996. The statements that A.J. made to Melendez were therefore admissible as statements made for the purpose of medical diagnosis and treatment.

### II

[4] Defendant argues the trial court erred by allowing expert testimony by Dr. Everette that in her opinion: (1) A.J.'s narrow hymen could have been caused by digital or penile penetration, and (2) A.J. had been sexually abused. He contends these opinions are based on speculation or conjecture, did not therefore assist the trier of fact, and should not have been admitted into evidence.[1] We disagree.

Rule 702 of the North Carolina Rules of Evidence provides that expert testimony may be made in the form of an opinion. N.C. Gen. Stat. § 8C-1, Rule 702 (Supp. 1998). Rule 702 does not, however, allow opinion testimony based on inadequate data. *See State v. Rogers*, 323

---

1. Defendant argues in his brief that Dr. Everette's testimony expressing her opinion that A.J. had been sexually abused was inadmissible on the ground it states a legal conclusion. This is a contention abandoned by Defendant at oral argument before this Court and we therefore do not address it.

N.C. 658, 664, 374 S.E.2d 852, 856 (1989); *see also Pulley v. City of Durham*, 121 N.C. App. 688, 693, 468 S.E.2d 506, 509 (1996) (doctor's opinion was not speculation and was therefore admissible under Rule 702 when "there was competent evidence in the record to show that [the doctor] based her opinion on her own observations of plaintiff, combined with her study of materials and her discussions with other professionals"); *State v. Clark*, 324 N.C. 146, 160, 377 S.E.2d 54, 62-63 (1989) (opinion of an expert was properly excluded when the expert stated his opinion was "purely speculation" and "conjecture").

The record indicates Dr. Everette based her opinions on her own exam of A.J., extensive personal experience examining children who have been sexually abused, knowledge of child sexual abuse studies, and a colleague's notes from an interview with A.J. She did not base her opinions on speculation or conjecture, but on adequate data. Her opinions are therefore admissible as expert testimony under Rule 702.

## III

**[5]** Defendant argues the trial court erred by imposing sentences, to run consecutively, on Defendant when Defendant was not present. We agree.

The sentence actually imposed in this case was the sentence contained in the written judgment. *See Abels v. Renfro Corp.*, 126 N.C. App. 800, 803, 486 S.E.2d 735, 737 ("Announcement of judgment in open court merely constitutes 'rendering' of judgment, not entry of judgment."), *disc. review denied*, 347 N.C. 263, 493 S.E.2d 450 (1997). The Defendant had a right to be present at the time that sentence was imposed. *See State v. Beasley*, 118 N.C. App. 508, 514, 455 S.E.2d 880, 884 (1995); *see also State v. Pope*, 257 N.C. 326, 330, 126 S.E.2d 126, 129 (1962) ("The right to be present at the time sentence or judgment is pronounced is a common law right, separate and apart from the constitutional or statutory right to be present at the trial."); *State v. Bonds*, 43 N.C. App. 467, 474, 259 S.E.2d 377, 381 (1979) (vacating judgment entered while accused was not present), *on reh'g*, 45 N.C. App. 62, 262 S.E.2d 340, *appeal dismissed and disc. review denied*, 300 N.C. 376, 267 S.E.2d 687, *cert. denied*, 449 U.S. 883, 66 L. Ed. 2d 107-08 (1980). Because there is no indication in this record that Defendant was present at the time the written judgment was entered, the sentence must be vacated and this matter remanded for the entry of a new sentencing judgment.

**IN RE LEFTWICH**

[135 N.C. App. 67 (1999)]

In so holding, we reject the State's argument that Defendant was present because he was present in open court at the time the sentence was originally rendered by the trial court. Had the trial court not altered its sentence, we would agree with the State. In this case, the legal effect of the oral judgment was that the prison sentences would run concurrently. N.C. Gen. Stat. § 15A-1354(a) (1997) (if court does not specifically state that multiple sentences will run consecutively, sentences must run concurrently). The written judgment actually entered by the trial court specifically provided that the sentences would run consecutively. This substantive change in the sentence could only be made in the Defendant's presence, where he and/or his attorney would have an opportunity to be heard.

Trial: No Error.

Sentence: Vacated and remanded.

Judges TIMMONS-GOODSON and HORTON concur.