IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1060

Filed: 1 September 2020

Forsyth County, Nos. 19 CRS 1781; 1789

STATE OF NORTH CAROLINA

v.

BILLY RUSSELL LAND

Appeal by Defendant from Orders entered 29 July 2019 by Judge Angela Puckett in Forsyth County Superior Court. Heard in the Court of Appeals 9 June 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Wendy J. Lindberg, for the State.*

> *Dylan J.C. Buffum for defendant-appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Billy Russell Land (Defendant) appeals from two Orders entered on 29 July 2019, finding him in criminal contempt. The Record reflects the following:

Following a trial in Forsyth County District Court, Defendant was found guilty of: (I) operating a motor vehicle on a street or highway while displaying an expired registration plate on the vehicle knowing the same to be expired; (II) operating a motor vehicle on a street or highway without having a current electronic inspection authorization for the vehicle, such vehicle requiring inspection in North Carolina;

and (III) operating a motor vehicle on a street or highway with no liability insurance. Defendant appealed these convictions to Superior Court.

Defendant appeared for a calendar call in Forsyth County Superior Court on 29 July 2019. Defendant, found indigent by the trial court, waived his right to counsel for the appeal of his traffic violations and appeared pro se. After a contentious calendar call—during which the trial court determined Defendant was continuously interrupting the court and Defendant was warned to stop doing so or face direct criminal contempt proceedings—and as Defendant was leaving the courtroom, he again interrupted the trial court.

At this point, the trial court ordered Defendant be brought back before it, saying, "Sir, I've warned you and warned you. And I specifically just said do not interrupt my court again as I'm going on, and you made a comment as you went walking out the door very loudly." The trial court informed Defendant it was beginning a summary direct criminal contempt proceeding against him. The trial court provided Defendant the opportunity to respond to the allegations of criminal contempt, asking Defendant if there was anything he wished to say. Defendant argued, "I'm under the Constitution. This is an expired plate matter. Under the Constitution, it says it carries no jail time." The trial court explained Defendant was not being tried for the traffic citations at the moment but rather for direct criminal contempt. Defendant continued speaking over the trial court as it tried to ask if there

was anything else he wished to say in his defense. After Defendant concluded, the trial court found Defendant in direct criminal contempt, sentencing him to twenty-four hours in the Forsyth County jail. Defendant gave notice of appeal in open court.

Defendant then asked, "How you gonna to [sic] place me under arrest, man? Y'all doing some illegal shit, man. I'm under the Constitution. The Haile -- the Haile is my law." The trial court warned Defendant if he interrupted the trial court again, it would hold him in contempt for a second time. Ignoring the trial court, Defendant went on, "I'm a Hebrew Israelite from the Tribe of Judah. I'm not a US citizen. Y'all not got a right to do this." As the bailiff tried to escort Defendant from the courtroom, he continued, "Y'all doing some illegal shit in here." At this point, the trial court called Defendant before it once more to commence a second criminal contempt proceeding. As the trial court moved through the proceeding, Defendant continued interrupting and speaking over the trial court. He again expressed wanting to file a notice of appeal, saying, "My lawyer's Yahweh Yahweh Yahweh[.]" To the trial court, Defendant said:

> I don't know who you think you are, ma'am, but you supposed to follow the Constitution. Under Bryant [sic] versus United States, it says that the Court must be watchful for the constitutional rights of the people and the citizen. Now, you're not doing that ma'am -- you're up here being arrogant -- because I had a question to ask you about whether my court date was going to be today.

Defendant continued speaking as the trial court concluded the proceeding and again found Defendant in contempt of court. This time, Defendant was sentenced to thirty days in the Forsyth County jail. As the bailiff took him away, Defendant repeatedly gave notice of appeal in open court.

On 29 June 2019, the trial court entered two Orders finding Defendant in criminal contempt. In the first Order (19 CRS 1781 Order), the trial court sentenced Defendant to thirty days' imprisonment. In the second Order (19 CRS 1789 Order), the trial court also sentenced Defendant to thirty days' imprisonment, which was to run consecutively to Defendant's sentence in the 19 CRS 1781 Order.

## Issues

On appeal, Defendant does not challenge the underlying bases of the Orders finding him in criminal contempt; rather, he focuses his arguments on whether he was deprived of the right to counsel in those proceedings and on errors in the entry of the Orders themselves. Thus, the dispositive issues are whether (I) the right to counsel granted under N.C. Gen. Stat. § 7A-451(a)(1) applies in a summary direct criminal contempt proceeding and (II) the trial court erred or committed clerical errors in entering its sentences in both the 19 CRS 1781 and 19 CRS 1789 Orders.

## Analysis

### I. Statutory Right to Counsel

Defendant first argues the trial court deprived him of his statutory right to counsel. "[A]lleged statutory errors are questions of law and as such, are reviewed *de novo*." *State v. Johnson*, 253 N.C. App. 337, 345, 801 S.E.2d 123, 128 (2017) (citation and quotation marks omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).

The trial court held Defendant in direct criminal contempt. Pursuant to Section 5A-13(a), direct criminal contempt occurs when the act:

> (1) Is committed within the sight or hearing of a presiding judicial official; and
>
> (2) Is committed in, or in immediate proximity to, the room where proceedings are being held before the court; and
>
> (3) Is likely to interrupt or interfere with matters then before the court.

N.C. Gen. Stat. § 5A-13(a)(1)-(3) (2019). In addition, "[t]he presiding judicial official may punish summarily for direct criminal contempt according to the requirements of [N.C. Gen. Stat. § 5A-14.]" *Id.* § 5A-13(a). The requirements of N.C. Gen. Stat. § 5A-14 for imposing contempt in a summary proceeding are:

> (a) The presiding judicial official may summarily impose measures in response to direct criminal contempt when necessary to restore order or maintain the dignity and authority of the court and when the measures are imposed substantially contemporaneously with the contempt.

> (b) Before imposing measures under this section, the judicial official must give the person charged with contempt summary notice of the charges and a summary opportunity to respond and must find facts supporting the summary imposition of measures in response to contempt. The facts must be established beyond a reasonable doubt.

*Id.* § 5A-14(a)-(b) (2019).

Defendant contends he was entitled to counsel pursuant to N.C. Gen. Stat. § 7A-451(a)(1), which provides: "An indigent person is entitled to the services of counsel in . . . (1) Any case in which imprisonment, or a fine of five hundred dollars ($500.00), or more, is likely to be adjudged." *Id.* § 7A-451(a)(1) (2019). The issue of whether Section 7A-451(a)(1)'s right to counsel applies in a summary direct criminal contempt proceeding is a question of first impression for our courts. In answering this question, we do, however, begin to find guidance for our analysis in our Supreme Court's decision in *Jolly v. Wright*. *See* 300 N.C. 83, 265 S.E.2d 135 (1980), *overruled on other grounds by McBride v. McBride*, 334 N.C. 124, 431 S.E.2d 14 (1993).

In *Jolly*, the sole question before the Court was "whether an indigent defendant has a statutory or constitutional right to be represented by appointed counsel in *civil* contempt proceedings[.]" *Id.* at 85, 265 S.E.2d at 138 (emphasis added). The defendant in *Jolly* contended Section 7A-451(a)(1), the subsection at issue in the present case, granted him a right to counsel in civil contempt proceedings because in such a proceeding, defendant argued, he was subject to imprisonment. *Id.*

Accordingly, our Supreme Court, although not discussing direct criminal contempt, analyzed Section 7A-451(a)(1) in answering the question before it.

The Court first noted, "[t]he intent of the Legislature controls the interpretation of a statute." *Id.* at 86, 265 S.E.2d at 139 (citation omitted). The *Jolly* Court then described its holding in *State v. Morris*, which was decided in the wake of *Gideon v. Wainwright*,[1]—"the Sixth Amendment right to appointed counsel was applicable to all felony and misdemeanor cases where the authorized punishment exceeded six months in prison and a $500 fine." *Jolly*, 300 N.C. at 87, 265 S.E.2d at 139 (citing *State v. Morris*, 275 N.C. 50, 59, 165 S.E.2d 245, 251 (1969)). *Morris*'s holding was codified by our General Assembly in the original version of Section 7A-451(a)(1). *Id.*

In *Argersinger v. Hamlin*, however, the Supreme Court of the United States expanded on *Gideon,* holding the Sixth Amendment required: "absent a knowing and intelligent waiver, no person may be imprisoned for *any offense*, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. 25, 37, 32 L. Ed. 2d 530, 538 (1972) (emphasis added) (footnote omitted). As recognized by the *Jolly* Court, our General Assembly amended Section 7A-451(a)(1) into its current form in a direct response to *Argersinger*. *Jolly*, 300 N.C. at 87, 265 S.E.2d at 139 (citation omitted).

---

[1] 372 U.S. 335, 9 L. Ed. 2d 799 (1963).

The *Jolly* Court stated: "It is clear, then, that the purpose of [Section] 7A-451(a)(1), as presently written, is to state the scope of entitlement to court appointed counsel in Sixth Amendment cases in light of current constitutional doctrine." *Id.* at 87, 265 S.E.2d at 140 (footnote omitted). "Use of the phrase '[a]ny case' [in Section 7A-451(a)(1)] is responsive to the precise holding of *Argersinger*, which states that the Sixth Amendment precludes *imprisonment* of a person for 'any offense,' however classified, unless he was represented by counsel at his trial. The words '[a]ny case' in [Section] 7A-451(a)(1) must therefore be construed as any criminal case *to which Sixth Amendment protections apply*." *Id.* at 87-88, 265 S.E.2d at 140 (alterations in original) (emphasis added).

The Court in *Jolly* also pointed out beyond Subsection (a)(1), Section 7A-451 sets out a number of specific situations in civil cases in which an indigent party has a right to counsel and civil contempt is not one such situation. *Id.* at 90, 265 S.E.2d at 141. In concluding its statutory analysis, the *Jolly* Court determined, "[a] joint review of legislative history and case law developments in the area of the Sixth Amendment right to appointed counsel leaves no doubt that the purpose of [Section] 7A-451(a)(1)] is to state the scope of an indigent's entitlement to court appointed counsel in criminal cases *subject to Sixth Amendment limitations*." *Id.* at 86-87, 265 S.E.2d at 139 (emphasis added).

The *Jolly* Court continued: "Given the civil nature of civil contempt, it follows that the Sixth Amendment right to counsel as set forth in *Argersinger* is inapplicable to civil contempt because that right is confined to criminal proceedings. Accordingly, if there is a right to counsel in a civil contempt action, its source must be found in the Due Process Clause of the Fourteenth Amendment[.]" *Id.* at 92, 265 S.E.2d at 142 (footnote and citations omitted). On the specific question before it, the Court in *Jolly* ultimately held, "due process requires appointment of counsel for indigents in nonsupport civil contempt proceedings only in those cases where assistance of counsel is necessary for an adequate presentation of the merits, or to otherwise ensure fundamental fairness." *Id.* at 93, 265 S.E.2d at 143.

Applying *Jolly* to the case at hand starts with a fundamental premise: "criminal contempts are crimes, and accordingly, the accused is entitled to the benefits of all constitutional safeguards." *O'Briant v. O'Briant*, 313 N.C. 432, 435, 329 S.E.2d 370, 373 (1985) (citation omitted). However, our courts and the United States Supreme Court have consistently held the Sixth Amendment's right to counsel does *not* apply in summary direct criminal contempt proceedings. In *In re Williams*, the defendant was summarily punished for direct criminal contempt and sentenced to ten days in jail. 269 N.C. 68, 76, 152 S.E.2d 317, 323 (1967). On appeal, the defendant argued he was erroneously denied representation by counsel; however, our

Supreme Court held the trial court was under no obligation to appoint counsel for the

defendant. *Id.* Specifically, the Court said:

> We find no merit in the contention that the sentence was originally imposed when the contemner was not represented by counsel, or in the contention that the court was under a duty to appoint counsel for him. Summary punishment for direct contempt committed in the presence of the court does not contemplate a trial at which the person charged with contempt is represented by counsel. . . . There is no basis for the contention that to carry out the sentence would deprive him of his liberty without due process of law on the ground that he was denied a hearing or denied representation by counsel of his choice.

*Id.* at 76, 152 S.E.2d at 323-24.

In *In re Oliver*, the Supreme Court of the United States ruled due process of

law requires one charged with criminal contempt "have the right to be represented

by counsel[.]" 333 U.S. 257, 275, 92 L. Ed. 682, 695 (1948). However, the Court

acknowledged there was a narrowly limited exception allowing trial courts to forego

constitutional due process requirements, defined as:

> [C]harges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public.

*Id.* (quotation marks omitted). *In re Oliver* therefore stands for the proposition

defendants summarily punished for direct criminal contempt have no constitutional

right to counsel. *See id.*; *see also Levine v. United States*, 362 U.S. 610, 616, 4 L. Ed.

- 10 -

2d 989, 995 (1960) (stating summary direct "[c]riminal contempt proceedings are not within 'all criminal prosecutions' to which [the Sixth] Amendment applies" (citations omitted)).

Accordingly, because *Jolly* recognized Section 7A-451(a)(1)'s "any case" language is construed as any criminal case to which Sixth Amendment protections apply and because our courts and the United States Supreme Court have consistently recognized no right to counsel under the Sixth Amendment exists in summary direct criminal contempt proceedings, application of *Jolly* here leads to the conclusion Section 7A-451(a)(1) does not apply to summary proceedings for direct criminal contempt.

Defendant astutely observes both (1) *In re Williams* pre-dated Section 7A-451(a)(1) by two years—thus, obviously not addressing a statutory right to counsel discussed in *Jolly*—and (2) *Jolly* was subsequently overruled by our Supreme Court in *McBride*. In *McBride*, our Supreme Court determined its prior analysis in *Jolly* was misplaced as it related to whether due process required appointment of counsel in *civil* contempt. Pointing to the United States Supreme Court's decision in *Lassiter v. Department of Social Services*, the *McBride* Court explained:

> [I]n determining whether due process requires the appointment of counsel for an indigent litigant in a particular proceeding, a court must first focus on the potential curtailment of the indigent's personal liberty rather than on the "civil" or "criminal" label placed on the proceeding. Where due process is concerned,

"it is the defendant's interest in personal freedom . . . which triggers the right to appointed counsel."

*McBride*, 334 N.C. at 126, 431 S.E.2d at 16 (alteration in original) (quoting *Lassiter v. Department of Social Services*, 452 U.S. 18, 25, 68 L. Ed. 2d 640, 648 (1981)). The *McBride* Court, in overruling *Jolly*'s specific holding, concluded: "In light of the Supreme Court's opinion in *Lassiter*, we now hold that principles of due process embodied in the Fourteenth Amendment require that, absent the appointment of counsel, indigent civil contemnors may not be incarcerated for failure to pay child support arrearages." *Id.* at 131, 431 S.E.2d at 19.

Notwithstanding the analysis utilized by *McBride* and *Lassiter*, these principles have not been extended to summary direct criminal contempt proceedings in the Sixth Amendment context. Indeed, to the contrary, the United States Supreme Court has subsequently held: "the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year)." *Turner v. Rogers*, 564 U.S. 431, 448, 180 L. Ed. 2d 452, 466 (2011). In fact, in its discussion, the *Turner* Court itself recognized the existing exception to the right to counsel in summary direct criminal contempt proceedings: "This Court has long held that the Sixth Amendment grants an indigent defendant the right to state-appointed counsel in a criminal case. And we have held that this same rule applies

to criminal contempt proceedings (*other than summary proceedings*)." *Id.* at 441, 180 L. Ed. 2d 461-62 (emphasis added) (emphasis and citations omitted).

Thus, in light of the existing precedent from both the United States and North Carolina Supreme Courts establishing there is no Sixth Amendment right to counsel in summary proceedings for direct criminal contempt and our Supreme Court's discussion in *Jolly* establishing the right to counsel under Section 7A-451(a)(1) extends only as far as the Sixth Amendment right to counsel, we conclude, in the case *sub judice*, Defendant had no statutory right to counsel under Section 7A-451(a)(1).

We find further support for our conclusion from the contemporaneous nature of summary proceedings for direct criminal contempt. As the United States Supreme Court recognized in *Cooke v. United States*:

> To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or *assistance of counsel before punishment*, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary.

267 U.S. 517, 534, 69 L. Ed. 767, 773 (1925) (emphasis added). Further, "[w]here the contempt is committed directly under the eye or within the view of the court, it may proceed upon its own knowledge of the facts and punish the offender, without further proof, and without issue or trial in any form[.]" *Id.* at 535, 69 L. Ed. at 773 (citations and quotation marks omitted); *see also State v. Yancy*, 4 N.C. 133, 133 (1814) ("The

- 13 -

punishment, in [summary direct criminal contempt] cases, must be immediate, or it would be ineffectual, as it is designed to suppress an outrage which impedes the business of the court.").

Here, the trial court found, based on its direct observation, Defendant was continuously interrupting the trial court, causing a disturbance to the trial court's ability to properly conduct business. The trial court immediately acted in summary fashion to maintain authority over its courtroom. *See Cooke*, 267 U.S. at 534, 69 L. Ed. at 773 ("To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court."). Since the trial court saw the contemptuous conduct first-hand, there were no questions of fact to be decided or evidence to be presented, where assistance of counsel could be especially useful. *See id.* ("There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense."). As such, the trial court was free to conduct summary proceedings and dictate punishment immediately based upon its own knowledge of the events. *See id.* at 535, 69 L. Ed. at 773 (citations omitted). Therefore, the trial court did not err in summarily punishing Defendant for direct criminal contempt without affording Defendant counsel because Section 7A-451(a)(1)'s right to counsel does not apply in summary direct criminal contempt proceedings.

In reaching this conclusion—and without questioning the propriety of the use of summary proceedings for direct criminal contempt in this case—we do, however, echo the Supreme Court of Florida, which in reaching a similar conclusion observed:

> That said, the very absence of the usual constitutional protections for an individual charged with direct criminal contempt and the extraordinary power to summarily punish an individual found in direct criminal contempt to incarceration for a period of up to six months without an attorney highlights what has been emphasized in our jurisprudence. Namely, courts must exercise restraint in using this power, especially where incarceration is being considered or imposed. The purpose of permitting a court to act immediately in cases of direct criminal contempt is that the misconduct of an individual in front of the court could interfere with the court's inherent authority to carry out its essential responsibilities.

*Plank v. State*, 190 So. 3d 594, 604-05 (Fla. 2016).

## II. Sentencing Errors

Defendant next argues, and the State concedes, the trial court committed clerical errors in both the 19 CRS 1781 and 19 CRS 1789 Orders. *See State v. Taylor*, 156 N.C. App. 172, 177, 576 S.E.2d 114, 117-18 (2003) (defining a clerical error as "an error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination" (citations and quotation marks omitted)). "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." *State v.*

*Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) (citation and quotation marks omitted).

Here, when announcing its ruling in 19 CRS 1781, the trial court sentenced Defendant to twenty-four hours in jail. However, the trial court's 19 CRS 1781 Order provided a thirty-day sentence of imprisonment. Thus, the trial court's sentence in the 19 CRS 1781 Order reflects a clerical error. *See State v. Lawing*, 12 N.C. App. 21, 23, 182 S.E.2d 10, 11-12 (1971) (holding a clerical error exists when a judgment does not reflect what was announced in open court). Accordingly, we remand for correction of the clerical error found in the 19 CRS 1781 Order. *See Smith*, 188 N.C. App. at 845, 656 S.E.2d at 696 (citation omitted).

As for the 19 CRS 1789 Order, Defendant first argues the trial court committed a clerical error by imposing the thirty-day sentence to run consecutively with the sentence in 19 CRS 1781 where the trial court in orally announcing its ruling did not specify whether the sentence should run concurrently or consecutively. *See* N.C. Gen. Stat. § 15A-1340.15(a) (2019) ("Unless otherwise specified by the court, all sentences of imprisonment run concurrently with any other sentences of imprisonment."). In the alternative, Defendant argues the trial court's imposition of a consecutive sentence in 19 CRS 1789 constituted a substantive change to his sentence made outside of his presence, thereby violating his right to be present during sentencing. *See State v. Crumbley*, 135 N.C. App. 59, 66, 519 S.E.2d 94, 99 (1999) (citations

omitted). We agree with Defendant's second argument and believe *Crumbley* controls our analysis.

In *Crumbley*, the defendant was convicted of multiple offenses, and the trial court orally rendered sentences for each conviction. *Id.* at 61, 519 S.E.2d at 96. These sentences were rendered in the defendant's presence in open court. *Id.* The trial court later entered a written and signed judgment imposing the same sentences as previously rendered but further stating the sentences would run consecutively, which had not been indicated in the previously orally rendered sentences. *Id.* On appeal, this Court vacated the sentence and remanded the matter for entry of a new sentencing judgment because the defendant was not present at the time the written judgment was entered and "[t]his substantive change in the sentence could only be made in the [d]efendant's presence, where he and/or his attorney would have an opportunity to be heard." *Id.* at 66-67, 519 S.E.2d at 99; *see also State v. Pope*, 257 N.C. 326, 330, 126 S.E.2d 126, 129 (1962) ("The right to be present at the time sentence or judgment is pronounced is a common law right, separate and apart from the constitutional or statutory right to be present at the trial." (citation omitted)).

Likewise, in the case *sub judice*, the 19 CRS 1789 Order reflected a substantive change from the sentence orally rendered by the trial court in Defendant's presence. This is so because where the trial court does not announce a sentence is to run consecutively with another sentence, a defendant's sentences are to run concurrently.

*See* N.C. Gen. Stat. § 15A-1340.15(a). "Because there is no indication in this record that Defendant was present at the time the written [19 CRS 1789 Order] was entered, the sentence must be vacated and this matter remanded for the entry of a new sentencing [order]." *Crumbley*, 135 N.C. App. at 66, 519 S.E.2d at 99.

## **Conclusion**

Accordingly, for the foregoing reasons, we hold Defendant was not entitled to counsel under N.C. Gen. Stat. § 7A-451(a)(1) where the trial court proceeded to summarily punish Defendant for direct criminal contempt. We, however, remand the 19 CRS 1781 Order for correction of the clerical error contained in that Order, and we vacate the 19 CRS 1789 Order and remand for the entry of a new sentencing order.

19 CRS 1781 IS REMANDED FOR CORRECTION OF CLERICAL ERROR.

19 CRS 1789 IS VACATED AND REMANDED.

Judges BRYANT and INMAN concur.